UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CYNTHIA WELFARE, | : | CIVIL ACTION NO. |
| | : | 3:02CV2101(AVC) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| PETER O' MEARA THE COMMISSIONER OF | : | |
| THE DEPARTMENT OF MENTAL | : | |
| RETARDATION FOR THE STATE OF | : | |
| CONNECTICUT, | : | November 20, 2003 |
| Defendant | : | |
| _____ | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

I.   **INTRODUCTION**

The Plaintiff, an employee of the Department of Mental Retardation, brought the Complaint in this matter, pursuant to 42 U.S.C. §1983, alleging that the Defendant, as Commissioner of the Department of Mental Retardation, interfered with her liberty interest in her good name and her property interest in her employment, and violated her right to procedural due process.

The Defendant has moved to dismiss the three counts of the Complaint. As set out below, the Plaintiff has adequately pled facts in support of the elements of her claims. The Plaintiff respectfully requests that the Court deny the Defendant's motion to dismiss.

II.   **STATEMENT OF FACTS**

The Plaintiff, Cynthia Welfare, has been employed in the field of care for

mentally retarded persons for more than twenty-one years. (Complaint, ¶ 6) Welfare's career includes service in both the private sector and in the employment of the Connecticut Department of Mental Retardation (DMR). (Id.) From December 1998 to the present, Welfare has been employed by DMR, and at all times relevant to this motion has been a permanent, classified employee. (Id., ¶ 7)

From April 2001 until July 2003, the Defendant, Peter O'Meara, in his capacity as Commissioner of DMR, held Welfare in a Kafkaesque limbo. On April 21, 2001, the Defendant placed Welfare on administrative leave and commenced administrative proceedings against her pursuant to Conn. Gen. Stat. §17a-247b, alleging that there were "substantiated allegations" that she had engaged in abuse or neglect of a mentally retarded person. (Id., ¶¶ 8, 10) The "substantiated allegations" were actually false allegations made by a previous employer, Star Agency, Inc., relating to an incident that occurred a full two and a half years earlier, in September 1998. (Id., ¶¶ 9-10)

The purpose of the administrative proceedings was to determine whether to place Welfare on the "DMR Registry." (Id., ¶ 12) Individuals who are placed on the Registry are ineligible to be employed by DMR or by any private agency that contracts with DMR for the purpose of providing care to mentally retarded people. (Id., ¶ 11) Being placed on the Registry by the Defendant would render Welfare ineligible to continue working in her position with DMR, and unable to work for <u>any</u> employer in Connecticut in her chosen occupation of providing care for mentally retarded people. (Id.) Thus, the Defendant's actions threatened

Welfare with the loss of her employment with DMR and a stigma that would permanently foreclose her from working in any position within her field.

The Defendant conducted an administrative hearing on May 31, 2001. (Id., ¶ 12) In conducting the hearing the Defendant did not afford Welfare the due process protections to which she was entitled in a proceeding that could result in a deprivation of her property interest in her employment and her liberty interest in her good name and reputation. (Id., ¶ 13) Specifically, the Defendant failed to provide due process by closing the hearing to the public; failing to conduct the hearing in a timely manner; failing to permit the Plaintiff to inspect and copy relevant and material records, papers and documents; failing to require that the hearing officer utilize a "clear and convincing" burden of proof in assessing the evidence against the Plaintiff; and failing to consider evidence that showed that the allegation against the Plaintiff was false. (Id.) The Defendant's conduct deprived Welfare of her right to due process and caused her to suffer emotional distress.

The hearing officer issued a "recommended ruling" on June 20, 2001. (Id., ¶ 14) The recommended ruling found that there was evidence supporting the conclusion that the allegations of abuse or neglect against Welfare was false. Nevertheless, the hearing officer recommended that Welfare be placed on the Registry. (Id.)

For nearly five months – until November 6, 2001 – the Defendant took no action on the recommended ruling. (Id., ¶ 16) During this period, Welfare continued to suffer enormous emotional distress. Welfare continued on

administrative leave throughout this period; she was unable to work, but every day she faced the possibility that her employment, her good name, and her career would be ended.

On November 6, 2001, the Defendant announced that no action would be taken on the recommended ruling. (Id., ¶ 16) The Defendant did not reject the hearing officer's recommendation or exonerate the Plaintiff or otherwise act to clear her good name of the allegations against her. (Id.) Instead, the Defendant informed Welfare that she was subject to new administrative proceedings on the same charge at any time in the future. (Id.)

For three weeks following the Defendant's announcement, Welfare continued to be on administrative leave, without being told when or whether she would be permitted to return to work. (Id., ¶ 17) The Defendant finally directed Welfare to return to work, on November 24, 2001. (Id.) Even when she returned, however, Welfare found that she was restricted from having any contact with mentally retarded clients or their families. (Id., ¶¶ 18-19) This restriction continued for approximately one month after Welfare's return. (Id.) During this time, the Defendant informed Welfare's supervisors and co-workers of the restrictions placed on her. (Id.)

Although Welfare was finally permitted to resume the duties of her job, she was never afforded a name-clearing hearing, nor did the Defendant ever state that the allegations against her were false. (Id., ¶ 20) Welfare continued to suffer under the threat of a new hearing and the possible loss of her job and career. At the time of the filing of this Complaint, on November 29, 2002, the

Defendant continued to reserve the option of renewing administrative proceedings against Welfare based on the 1998 allegations against her.[1]  (Id.) This ongoing threat caused Welfare to continue to suffer severe emotional distress.

The Defendant's motion to dismiss asserts, in essence, that Welfare' claims in this action must be dismissed because she was never deprived of anything.  The Defendant reasons that being placed on administrative leave for seven months, being humiliated by false allegations that go to the heart of Welfare's good name and reputation, being subjected to an administrative proceeding that was rife with procedural defects, and living with the threat of further proceedings against her long after she was finally permitted to return to work, did not constitute a "deprivation of life, liberty or property" within the meaning of the United States Constitution.  The Court should deny the Defendant's motion to dismiss.

### III.   DISCUSSION

#### A.   The legal standard

This Court has stated that:

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "merely ... asses[es] the legal feasibility of the complaint, [it does] not ... assay the weight of the evidence which might be offered in support thereof." <u>Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.</u>, 748 F.2d 774, 779 (2d Cir.1984). When ruling on a motion to dismiss, the court must presume that the well-pleaded facts alleged in the complaint are

---

[1] On July 2, 2003 – a full two years after the public hearing, nineteen months after she was permitted to return to work, and seven months after the filing of the Complaint in this matter – the Defendant sent a letter to Welfare stating that the proceedings against her had been "closed."

true and draw all reasonable inferences from those facts in favor of the plaintiff. See Sykes v. James, 13 F.3d 515, 519 (2d Cir.1993). A court may dismiss a complaint at this stage only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Cadle, Co. v. Flanagan  271 F.Supp.2d 379, 384 (D.Conn., 7/3/03).

As set out below, the Plaintiff has plainly alleged facts supporting her claim, and upon which relief may be granted.

### B. The Plaintiff has sufficiently pled a violation of her liberty interest in her good name and reputation

For the Plaintiff to proceed on her claim that she was deprived of a constitutionally-protected liberty interest in violation of 42 U.S.C. §1983, she must demonstrate that she possessed such an interest and that she suffered the deprivation of that interest due to state action. Valmonte v. Bane, 18 F.3d 992, 998 (2nd Cir. 1994). "The question of whether one's good name and standing, and the interest in protecting that reputation, constitutes a protectible liberty interest has been considered in a string of Supreme Court and Second Circuit cases. The Supreme Court held in 1971 that a liberty interest may be implicated 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him.'" Valmonte, 18 F.3d at 999, quoting, Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971).

However, government allegations of professional incompetence do not implicate a liberty interest in every instance. Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (1996). "Such allegations will support a right to a name-clearing hearing only when they denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a

fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." 96 F.3d at 630-31.

Thus, the Second Circuit has found a deprivation of a liberty interest where a school district announced that the reasons for a school principal's termination were that he "'failed to demonstrate that quality of leadership necessary to effectively deal with the educational program'; that he was responsible for the rapid deterioration of the school; that he 'had not provided for the basic safety of the children and staff'; and that his 'leadership' has 'created a climate of confusion and discontent.'" Huntley v. Community Sch. Bd., 543 F.2d 979, 985 (2d Cir. 1976), cert. denied, 430 U.S. 929 (1977). "These charges," the Second Circuit observed, "have become part of Huntley's employment record and have been made a matter of public knowledge deliberately by Superintendent Rogers and the Board members." Id.

In distinguishing the facts of Huntley from Paul v. Davis, 424 U.S. 693 (1976), in which the Supreme Court found that placing a plaintiff on a list of "active shoplifters" did not implicate the plaintiff's liberty interests, the Second Circuit noted the particular role that the state actors played in Huntley: "The Board and the district superintendent were responsible for evaluating the supervisor's performance. They not merely have exercised official powers for improper purposes; they have abused state functions which they were charged with implementing." 543 F.2d at 985-986.

Similarly, in Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623 (1996), the Defendants provided a "list" of purported reasons for the termination of the plaintiff, an assistant principal, which included allegations that she had failed to adequately perform many of the duties of her job, which the plaintiff alleged were false and were fabricated in order to retaliate against her for her prior complaint of sex discrimination. 96 F.3d at 627-28. The Second Circuit

found that such allegations, included in the plaintiff's personnel file and therefore likely to be disclosed to prospective employers, deprived the plaintiff of a liberty interest because it effectively prevented her from obtaining employment in her field. 96 F.3d at 631-32.

      The Plaintiff alleges in her Complaint that for more than twenty-one years she has worked in the field of mental retardation, working with and caring for mentally retarded clients. The Defendant "alleged that . . . the Plaintiff had been terminated from her previous position because of a substantiated allegation of neglect of a DMR client under her care. That allegation was false." (Complaint, ¶ 10) The Plaintiff has further alleged that the Defendant caused a public hearing to be conducted based upon that allegation and that the hearing resulted in a recommended ruling against her. (Complaint, ¶¶ 12, 14) The Plaintiff has alleged that although the Defendant did not adopt the recommended ruling, he has neither issued a ruling finding the allegation against her to be false, nor provided the Plaintiff with a hearing that would clear her good name, and he stated that the Plaintiff could be subject to additional proceedings against her relating to the allegation of neglect. (Complaint, ¶¶ 19-20) In addition, the Plaintiff has alleged that upon her return to work from administrative leave, and for a period of approximately one month, the Defendant placed the Plaintiff on restricted duty, barring her from contact with mentally retarded clients and family members, and that this restriction was communicated to the Plaintiff's supervisors and co-workers. (Complaint, ¶¶ 18-19) This disclosure, in conjunction with the Defendant's actions, also placed a stigma on the Plaintiff such as would be likely to impede her ability to work in her profession.

      Thus, the Complaint sufficiently alleges that the Defendant's official action as Commissioner of the Department of Mental Retardation has impugned her good name without providing a name-clearing hearing. Though the Defendant

may be heard to argue that he never adopted the recommended ruling finding that the Plaintiff was guilty of the conduct alleged, it is undeniable that he has not provided her with an opportunity to clear her name. Indeed, the Defendant told the Plaintiff that he was reserving the possibility of reviving the allegation in future proceedings.

The nature of the Plaintiff's life-long career has been the counseling and care of persons with mental retardation. The Defendant's allegation struck at the heart of that career. The failure to provide her with an opportunity to clear her name and the express reservation of the right to revive the allegation in the future violated the Plaintiff's right to be free from governmental actions that defame her and interfere with her ability to work in her chosen profession.

The Defendant's motion to dismiss asserts that the Plaintiff has not stated a liberty interest claim because she does not allege any "statement" by the Defendant that "was sufficiently derogatory to injure [her] reputation, that is capable of being proved false, and that he or she claims is false." (Def. Mem., p. 12) The Defendant also asserts that the allegations made against the Plaintiff do not suffice to meet the "plus" factor that courts have required in §1983 liberty interest claims. The Defendant ignores both the specifics of the Plaintiff's complaint and the reasonable inferences that may be drawn therefrom. The Complaint plainly alleges that the Defendant, acting in his capacity as the Commissioner of DMR, asserted that "the Plaintiff had been terminated from her previous position because of a substantiated allegation of neglect of a DMR client under her care," and that this statement is false. (Complaint, ¶ 10)

The Complaint goes on to plead that despite evidence of the falsity of the

statement, the Defendant kept the Plaintiff on administrative leave for a total of seven months, restricted her duties for an additional month, made her co-workers aware of those restrictions, and placed her under threat of further action because of that allegation for a period totaling two years from the time of the administrative hearing.  Plainly the allegation of termination for neglect was derogatory, was and is susceptible to being proven false, and the Plaintiff has alleged that it is false.  Moreover, the Defendant placed the Plaintiff under a cloud of suspicion for two years, and kept the Plaintiff in a position in which at any time the administrative actions against her could have been revived and her career terminated.  At no point in that period did the Defendant give the Plaintiff the opportunity to clear her name, nor did he acknowledge that the allegation against her was false.  The Court may reasonably find that these allegations <u>could</u> state a cause of action for deprivation of a liberty interest.

      Where a state actor publishes derogatory and false statements about a citizen that are likely to destroy her professional reputation, and refuses to permit her to clear her name for a period of two years, the Court may find that the government has deprived the Plaintiff of a liberty interest in her good name and reputation sufficient to support an action for redress under §1983. The Defendant's facile assertion that his statements and actions as Commissioner of the Department of Mental Retardation did not constitute false and derogatory statements and did not place a "tangible burden" on the Plaintiff should be rejected.  The Plaintiff respectfully requests that the Court deny the Defendant's motion to dismiss.

**C.     The Plaintiff has adequately pled Defendant's intereference with a protected property interest**

Though claims to vindicate the deprivation of property interests are brought under federal law, the protectible property interests themselves are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). A tenured public employee such as the Plaintiff posses a property interest in that continued employment, and said property interest is protected by the Due Process clause of the United States Constitution. <u>Harhay v. Town of Ellington Bd. of Educ.</u>, 323 F.3d 206, 212 (2nd Cir. 3/21/03).

The Defendant asserts that the Plaintiff has not alleged a deprivation of a property interest in her employment because she cannot show that she was terminated and cannot point to any other independent "source" of a property interest. (Def. Mem., p. 9) Indeed, though the Defendant caused the Plaintiff to be removed from work for a period of approximately seven months, and then returned her only to perform "make work" while barring her from contact with clients or their families for an additional month, the Defendant did not fire the Plaintiff or deprive her of wages during that time.

The Defendant is mistaken, however, in its assertion that the Plaintiff's property interest in her employment is limited to the paycheck that she receives. The Second Circuit has held that a public employee may have a property interest not only in termination, but also in not being demoted, not being denied a promotional opportunity, and not being disciplined. <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 318 (2nd Cir. 2002). In <u>Tweedall v. Fritz</u>, a district court

also found that a tenured teacher had a "significant" property interest in not being subjected to a paid leave of absence for allegations of sexual misconduct because such a suspension "carries with it the potential of a devastating impact on that teacher's reputation." 987 F.Supp. 1126, 1132 (S.D. Ind. 1997) (finding that the interest did not necessitate a pre-deprivation hearing where it was overcome by the school's compelling need to protect the integrity of the investigation). On the facts of the case at bar, the Court could reasonably infer that the Plaintiff possesses a property interest not just in the fact of being employed, but in being able to do her job, including all of the appurtenances of doing her job, such as being able to be considered for promotions or transfers, to participate in work-related training, and to be free from the career stigma of being removed from the workplace because of allegations of client neglect for a lengthy period of time.

Plainly, the Plaintiff's allegations that the Defendant placed her on administrative leave for seven months, kept her on restricted duties for a month after that, and then continued to keep her under the threat of further proceedings that could have led to the termination of her employment are sufficient to allege an interference with and deprivation of the Plaintiff's property interest as described above.

Thus, the Court should find that the Plaintiff has sufficiently pled a deprivation of a property interest by the Defendant, and deny the Defendant's motion to dismiss.[2]

---

[2] Gordon v. Nicoletti, 84 F.Supp. 2d 304 (D.Conn. 2000), cited by the Defendant, does cite to numerous cases that find, as the Defendant suggests, that conduct short of termination

**D.     The Plaintiff has sufficiently alleged violations of procedural due process**

The Defendant asserts in his memorandum that "the plaintiff alleges a due process violation without alleging that she was deprived of anything." (Def. Mem., p. 5) The Defendant acknowledges, however, that "[t]he protections of the due process clause are triggered when there has been a deprivation" of an individual's life, liberty, or property. (Id.) As set out above, the Plaintiff has alleged deprivation of her liberty interest in her good name and her property interest in her employment. The Plaintiff has also alleged various fundamental defects in the manner which the administrative proceedings utilized by the Defendant were carried out. Therefore, the Court should find that she has sufficiently pled a claim for violations of her right to procedural due process.

"[T[he right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions." Carey v. Piphus, 435 U.S. 247 (1978). In Carey v. Piphus, a group of elementary and secondary school students alleged that they had been suspended from public school without procedural due process. The Supreme Court pointed out that the plaintiffs made no effort to put on evidence of compensable harm to them

---

would not implicate an employee's property interest. 84 F.Supp. 2d at 309. None of those cases arose in the Second Circuit, however, and so none are binding on this Court. Ciambriello is a Second Circuit case of more recent vintage than Judge Goettel's decision in Gordon. Moreover, Ciambriello is not inconsistent with the court's reasoning in Gordon, where Judge Goettel stated that "Plaintiff has cited no statute or contract provision or any other independent source that would support her entitlement to remain in her position as a fine arts teacher at the Middle School." 84 F.Supp.2d at 310. In Ciambriello, the Second Circuit found in the terms of the plaintiff's collective bargaining agreement the contractual basis for a property interest in not being disciplined except for good cause. 292 F.3d at 314. Here, should the Court determine that the Plaintiff's failure to plead the similar specifics of her collective bargaining agreement would be fatal to her property interest claim, the Plaintiff respectfully requests that she be permitted to amend her complaint in order to clarify that point.

resulting from the defendant's conduct, but held that the plaintiffs were still entitled to an award of nominal damages without proof of actual injury. 435 U.S. at 266. Indeed, the Court went on to remand the matter, ordering that even if the district court were to find that the suspensions themselves were justified, the plaintiffs "nevertheless will be entitled to recover nominal damages." 435 U.S. at 267.

The Supreme Court's holding in Carey highlights the importance that courts must give to ensuring procedural due process. The Defendant's motion to dismiss the procedural due process claim does not (and could not) rest on a denial of the allegations of administrative misconduct, but instead asserts that the Defendant is not bound to respect guarantees of due process so long as, at the end of the day, they do not result in a compensable harm. Carey rejects this approach and finds that a state actor may be liable for failure to comply with due process, even in the absence of evidence of compensable harm.

Therefore, the Plaintiff respectfully requests that the Court deny the Defendant's motion to dismiss.

## IV. **CONCLUSION**

For the reasons stated above, the Plaintiff respectfully requests that the Court deny the Defendant's motion to dismiss.

THE PLAINTIFF,

By: _____
Peter Goselin ct16074
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105
(860) 233-9821
pdgoselin@lapm.org

## CERTIFICATE OF SERVICE

     This hereby certifies that the Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss has been mailed, first class mail, postage pre-paid, on this ___ day of November 2003 to all counsel of record as follows:

Thomas M. Fiorentino
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

                                            Peter Goselin